## BOARD OF DIRECTORS OF JEFFERSON COUNTY BRIDGE DISTRICT v. COLLIER.

### Opinion delivered July 1, 1912.

1.  BRIDGES—IMPROVEMENT DISTRICT.—A bridge wholly within a county may be the subject of an improvement district, including the whole of a county, without invading the exclusive original jurisdiction of county courts in all matters relating to county bridges, conferred by Const. 1874, art. 7, § 28. (Page 427.)

2.  SAME—IMPROVEMENT DISTRICT.—Where a bridge is of special benefit to the owners of real property in an improvement district to be benefited, it may, through the agency of such improvement district, be constructed at the expense of the owners of such property. (Page 429.)

3.  SAME—EXTENT OF TERRITORY.—The provisions of Const. 1874, art. 12, § 5, and art. 16, § 1, prohibiting counties from lending their credit and from issuing interest-bearing evidences of debt, do not prohibit the Legislature from creating an improvement district consisting of an entire county. (Page 430.)

4.  SAME—IMPROVEMENT DISTRICT—BOUNDARIES.—The action of the Legislature in determining the boundaries of a bridge improvement district created by it is conclusive upon the courts except as to obvious and demonstrable mistakes. (Page 430.)

5.  SAME—IMPROVEMENT DISTRICT—VALIDITY OF STATUTE.—Act April 24, 1911, (Special and Priv. Acts 1911, p12) 6.,§ 10, which provides for an assessment for the construction of a bridge in an improvement district created by the act, but limits the amount thereof to the value of the benefits, does not violate any right of property owners. (Page 430.)

6.  SAME—IMPROVEMENT DISTRICT—VALIDITY OF STATUTE.—Act April 24, 1911, (Special and Priv. Acts 1911, p. 612) § 34, which provides that, if the Jefferson County Court shall not take over the bridge provided for by the act, the board of directors of the improvement district created by the act may annually levy assessments to maintain the bridge and its approaches, is not void for uncertainty in not specifically fixing the methods of levying assessments and the rate thereof. (Page 431.)

7.  SAME—ASCERTAINING WILL OF MAJORITY.—As the Legislature could have created an improvement district consisting of an entire county, without providing means for ascertaining the will of a majority of the land owners, an act which provided that an improvement district consisting of an entire county should be put in force on "petitions purporting to be signed by a majority, either in number, or in acreage, or in value, of the holders of real property within the said district," is not unconstitutional. (Page 431.)

Appeal from Jefferson Chancery Court; *John M. Elliott,* Chancellor; reversed and dismissed.

*Mehaffy, Reid & Mehaffy, Danaher & Danaher* and *Coleman & Gantt,* for appellant.

1.  This act is a duplicate of the act passed upon in 96 Ark. 410, 415, 416.

2.  An improvement district is not a municipality, nor a county within the meaning of § 1, art 16.    55 Ark. 148.

3.  The Legislature is the sole judge of whether notice of a special act was given or not.    59 Ark. 513, 61 *Id.* 21.

4.  Assessment according to benefits does not violate the constitutional requirements of equality and uniformity.    48 Ark. 370; 96 *Id.* 410.

*Asa C. Gracie* and *Carmichael, Brooks & Powers,* for appellee.

1.  The act differs materially from the Shibley case, 96 Ark. 410.    The Fort Smith act did not include all the lands in either of the two counties.    This act includes *all* the lands in Jefferson County, and invades the jurisdiction of the county court.    92 Ark. 93, 100.

2.   The tenth section violates § 4, art. 12, and § 9, art. 16. Constitution.

3.   *Davis* v. *Gaines*, 48 Ark. 370, should be overruled; it never was law.   79 Ark. 550; 86 *Id.* 213; 75 *Id.* 354; 73 *Id.* 123; 78 *Id.* 432; 77 *Id.* 160.

MCCULLOCH, C. J.   The General Assembly of 1911 enacted a special statute creating an improvement district, embracing the whole of Jefferson County, for the purpose of constructing and maintaining a bridge over the Arkansas River at or near the city of Pine Bluff.   Act April 24, 1911.

The statute is similar in all respects to that creating the Fort Smith and Van Buren District, which is set forth in the opinion of this court in the case of *Shibley* v. *Fort Smith & Van Buren Bridge District*, 96 Ark. 410, 132 S. W. 444, where most, if not all, of the questions presented in the present suit are discussed.   The only material difference is that the Fort Smith and Van Buren District was formed for the construction of a bridge which was to span a river where it formed the boundary between two counties, and the territory included a portion, not all, of the two counties; whereas this district is created to construct a bridge wholly in Jefferson County, and the territory to be affected covers the whole of that county.

The appellee, as a citizen and land owner of Jefferson County, instituted this action in the chancery court to restrain the board of directors from carrying out the provisions of the statute on the alleged ground that it is unconstitutional and void.   The chancery court declared the statute void, and granted the prayer of appellee's complaint for a perpetual injunction.

The first objection urged to the validity of the statute creating the district is that it invades the "exclusive original jurisdiction" of county courts "in all matters relating to county taxes, roads and bridges."   Constitution of 1874, art. 7, § 28.

The same question was raised in the Shibley case, *supra*, and it was decided against the present contention.   In that case we said:

"We perceive no sound reason why the Legislature may not, without trenching upon the jurisdiction of the county court, authorize the construction of new roads and bridges as local improvements.   It does not impose upon the general

public the burden of maintaining the improvement, nor does it fasten upon the county court the duty of supervising and maintaining the new road or bridge as a part of the internal affairs of the county. The statute now under consideration, by its express terms, is rescued from such an objection, for it provides that the county courts of said counties *may* take over and acquire the bridge after it has been constructed, and maintain it as a public highway, but that, in the event the county court does not decide to take it over, then it shall be maintained by levying annual assessments on the property benefited. It is left entirely optional with the county courts of the two counties whether or not the control of the bridge shall be taken over, and this provision leaves unimpaired the jurisdiction of the county court over the bridge when it has seen fit to exercise that jurisdiction. This conclusion leaves out of consideration the fact that the bridge is to span a navigable river which is the boundary between two counties, and that it is not and can not be wholly within the jurisdiction of the county court of either county. The result would be the same if it were a bridge to be erected wholly within the bounds of one county; for we are of the opinion that, even under those circumstances, its construction may be authorized as a local improvement. The construction of an improvement under those circumstances would not be an invasion of the jurisdiction of the county court."

It is insisted now that the latter part of the above quotation was mere *dictum*. But we still fail to see any distinction, so far as jurisdiction of the county court is concerned, between a bridge spanning a stream which forms the boundary of two counties and one situated wholly within one county, and we now hold that there is none, even if it be conceded that the language on this subject in the former opinion was *dictum*. The general statutes of the State on the subject of county bridges recognizes the jurisdiction of county courts over bridges spanning navigable streams on the boundary line, and authorizes county courts to join in the construction and maintenance thereof. Kirby's Digest, § 548, as amended by Acts 1907, page 110. So, if the erection of the Van Buren bridge could be made the subject of a local improvement district without invading the jurisdiction of the county courts of the two coun-

ties affected thereby, then the erection of a bridge wholly within the bounds of Jefferson County can also be legally made the subject of a local improvement district.

Counsel for appellee rely on *Road Improvement District* v. *Glover,* 89 Ark. 513, and *Parkview Land Co.* v. *Road Improvement District,* 92 Ark. 93, as sustaining their contention. Those two cases dealt with statutes which authorized construction by local improvement districts of new roads and imposing them on the county court for maintenance. We held that the statutes were to that extent void as an invasion of the jurisdiction of the county court. We said in the Shibley case, *supra,* discussing the first of the above cited cases, that: "It was not held that the Constitution withholds from the Legislature the power to authorize the construction, as local improvements, of new roads to be paid for by assessments on property to be benefited, nor is there a justifiable inference to be drawn from the decision (in the Glover case) that the court should hold that the Legislature can not authorize the construction of a bridge as a local improvement."

Multiplication of words can not, we think, make it any plainer that it is not an invasion of the jurisdiction of county courts for the Legislature to authorize the construction, by local improvement district, of new roads or bridges which specially benefit the real property in the district, and which are not imposed upon the county court for maintenance. If the road or bridge is of special benefit to the real property in the prescribed territory, it may, through the agency of an improvement district, be constructed at the expense of the owners of the property to be benefited, the same as any other local improvement.

It is also contended, on the authority of those cases, that the whole of a county can not be embraced in a district for the construction of a road or bridge. The point made in those cases, in that respect, is that the road system of a county can not be taken away from the county court and given over to the directors or commissioners of an improvement district. We did not hold that an entire county could not be included in a district for the construction of a road or bridge which specially benefited all the lands in the district. Judge BATTLE, in delivering the opinion of the court in the Glover case, said:

"Its (the county's) roads and need for roads are too numerous, diverse and independent, and some too remote from each other, to be embraced in one district and sustained by local assessments. In such a case the board of directors of the road district would become a partial substitute for the county court vested with its jurisdiction over roads."

We are not now called on to say whether a single road can benefit the whole of a county so as to justify the imposition of special assessments for its construction. But we do hold that a bridge across a navigable stream may be of such special benefit to the lands in the entire county that it may be made the subject of an improvement district. The creation of such a district and giving authority to levy special assessments and issue bonds to defray the cost of construction of the improvement does not violate the provisions of art. 12, § 5, of the Constitution prohibiting a county or municipality from lending "its credit to any corporation, association, institution or individual;" nor of art. 16, § 1, prohibiting the State and counties and municipalities from lending credit for any purpose whatever; nor of the other provisions of the same section prohibiting counties and municipalities from issuing interest-bearing evidences of debt. *Lee Wilson Co.* v. *Wm. R. Compton Bond Mort. Co.*, 103 Ark. 452; *St. Louis, I. M. & S. Ry. Co.* v. *Board of Directors, etc.*, 103 Ark. 127.

The fact that the whole of the county is embraced in an improvement district does not make it a lending of the county's credit or the issuance by the county of interest-bearing evidences of debt.

The Legislature has determined the boundaries of the district, and we are concluded by that determination except as to obvious and demonstrable mistakes; and none are shown. The question of the amount of benefits is to be determined in the manner provided by the statute.

An attack is made on the validity of section 10 of the act, which relates to the levying of assessments. That section provides that, "for the purpose of constructing the bridge," etc., assessments shall be levied on the increased value or betterment to accrue from the improvements upon the lands, "which tax shall not exceed 6 per cent. per annum of the betterment accruing to said property nor to be less in any year than a per

centum that will produce a revenue sufficient to pay all interest, charges, expenses of operation or maintenance, until the improvement contemplated by this act shall have been completed and all bonds issued and debts contracted therefor shall have been paid."

The total amount of the assessments is thus limited to the value of the benefits, and each annual assessment is limited to 6 per centum of such value. It constitutes a maximum and minimum rate of assessment, and the latter can not be made to exceed the former. The provided scheme does not violate any right of the property owner, since it does not authorize assessments in excess of the value of benefits.

Section 34 of the act provides that if the county court shall not take over the bridge after completion "then the board of directors is authorized, after the improvement herein provided for is paid for, to annually levy assessments upon the real property of said district, said assessments to be apportioned upon the benefits to be derived from the maintenance of said bridge, for the purpose of maintaining said bridge and its approaches in good repair and condition so as to keep it forever open to the public."

Objection is made that this provision is void for uncertainty, in that it does not specifically point out the method of levying assessments and the rate thereof. It is manifest from the language of the section that its framers meant for annual assessments to be levied in the same manner, and under the same restrictions, as provided in previous sections, except that the assessments are "to be apportioned upon the benefits to be derived from the maintenance of said bridge." The annual assessments for maintenance are to be sufficient as a whole to pay the annual expenses of maintenance, but not to exceed the benefits derived therefrom. It may be said that the benefits from maintenance of the bridge will be inseparable from the benefits derived from its construction, but that question may arise only when new assessments are levied for that purpose and are sought to be enforced. It can not be determined in advance, and that feature of the statute does not affect the validity of the other parts.

The Legislature could have created a district and put the organization in force without providing means for ascertaining

the will of a majority of land owners. *Shibley* v. *Bridge District, supra; Moore* v. *Board of Directors, etc.,* 98 Ark. 113. This includes the power to put it into force on "petitions purporting to be signed by a majority, either in number, or in acreage, or in value, of the holders of real property within the said district." It could have ascertained for itself whether or not a majority of the property owners consented or fixed a basis for determining the will of the majority.

The other points urged against the validity of the statute creating the district are so well settled by the decisions of this court that we do not deem it necessary to discuss them. We are of the opinion that, if we are to follow our previous decisions on the subject, the statute can not be successfully assailed, and that the chancellor erred in granting the injunction. The decree is therefore reversed, and the complaint dismissed for want of equity.

KIRBY, J., dissents.