## SWEPSTON v. AVERY.

### Opinion delivered May 3, 1915.

1. ROAD IMPROVEMENT DISTRICT—FORMATION—WHOLE COUNTY.—A statute will be held ineffective which undertakes to form more than ninety-five per cent of a county into a single road improvement district.

2. ROAD IMPROVEMENT DISTRICT—INDEPENDENT ROADS—SINGLE DISTRICT.—When it is attempted to embrace such a considerable part of one county in a single road improvement district, so as to render the various roads affected by it, diverse, independent and remote, when the several improvements can not be grouped into one district and treated as single, the act making such attempt will be declared invalid.

3. LOCAL IMPROVEMENTS—BENEFITS—SPECIAL ASSESSMENTS.—Special assessments can be justified only on the ground that the contemplated improvement is local in its nature, and that the property taxed will be specially and peculiarly benefited.

4. LOCAL IMPROVEMENT—BENEFITS—LEGISLATION—DETERMINATION—DUTY OF COURTS.—When a statute, undertakes to form over ninety-five per cent of one county into a single road improvement district, and recites that the improvement of each road in the county will result in equal benefit, or benefit in the same ratio, to all the lands in the district, the courts are not bound by such recital, the same being arbitrary and unreasonable.

5. ROAD IMPROVEMENT DISTRICTS—FORMATION—VALIDITY.—Act 192, p. 797, Acts 1913, to create the Crittenden County Road Improvement District, held, invalid so far as it attempted to throw substantially all the road interests of Crittenden County into an improvement district, and authorize special assessments to pay for any roads that the commissioners may deem it advisable to improve.

6. LOCAL IMPROVEMENTS—INDEPENDENT IMPROVEMENTS—LEGISLATIVE AUTHORITY.—The Legislature is without authority to group together independent improvements, and arbitrarily declare them to be a single improvement.

Appeal from Crittenden Chancery Court; *Charles D. Frierson,* Chancellor; reversed.

*Brown & Anderson,* for appellants.

1. Our Constitution confers *exclusive* jurisdiction as to taxes, roads and bridges, etc., upon the county court. Art. 7, § 28, and Amend. No. 5, Kirby's Dig., § § 7227-8, 7273.

2. The act in question is unconstitutional and void, as an attempt to usurp the jurisdiction of the county court and vest it in a board created by the Legislature. It is also void because it lays off, practically, the *whole* county into one district and determines and declares in advance that all the real estate in the whole district (practically county) will be specially benefited. No *particular* improvement is provided for as in the *Bridge* cases. 89 Ark. 513; 50 *Id.* 117; 76 *Id.* 23; 103 *Id.* 529; 96 *Id.* 419; 84 *Id.* 555; 70 *Id.* 549.

3. The act cuts off all inquiry as to the matter of special benefits or betterments which are the only foundation for such local assessments. 50 Ark. 117.

4. The roads of an entire county are too numerous, diverse and remote to be included in one district. 89 Ark. 513.

*Berry & Neely* and *T. K. Riddick,* for appellees.

1. The act does not invade the jurisdiction of the county court. 104 Ark. 429. The Glover case (89 Ark. 513) does *not* determine this case. It has been modified by subsequent decisions. Here the entire county is not included and the board is not authorized to lay out or establish new roads. 96 Ark. 419, 104 *Id.* 429.

2. The Legislature is the final judge of whether property in the proposed district is benefited. 50 Ark. 117; 104 *Id.* 431; 96 *Id.* 419; 97 *Id.* 322; 108 *Id.* 419; 59 *Id.* 513. Absolute equality and uniformity in improvement districts is impossible.

3. Local assessments are not *"taxes."* 80 Ark. 109; 81 *Id.* 562. The Legislature is the final judge of the limits of improvement districts and its conclusions can not be reviewed by the courts 89 Ark. 513; 87 *Id.* 8; 81 *Id.* 562; 108 *Id.* 419; 102 *Id.* 553.

4. The act does not violate any provision of our Constitution or that of the United States. 181 U. S. 324; 103 Ark. 526, and cases, *supra;* 172 U. S. 269.

McCULLOCH, C. J. This is an action instituted by appellant in the chancery court of Crittenden County, attacking the validity of a road improvement district formed in that county by a special act passed by the General Assembly of 1913, the title of said act being "to create the Crittenden County Road Improvement District."* The first section provides that all of Crittenden County west of the center of the main channel of the Mississippi River, except seven sections properly described, lying in the northwest corner of the county, is organized into an improvement district to be known as "Crittenden County Road Improvement District." The commissioners are named in the statute and it is declared that the board of commissioners and their successors shall constitute a body corporate under the style indicated above, with power to sue and be sued, etc., and that "the said commissioners shall be maintained in perpetual succession as a board of improvement for the preservation and maintenance of the highways herein contemplated." Section 2 of the act defines the purpose of the organization, as follows: "The said district is hereby organized for the purpose of improving the public highways within its territories, including the construction of such bridges as may be required in improving such highways, and the commissioners shall proceed to improve public roads within the district as now, or may hereafter be laid out, and such roads as the county court of Crittenden County may approve so as to connect all parts of the district with all other parts and with the county site. * * * The commissioners shall determine which roads shall be improved, and the order in which the improvement shall be made."

Section 3 provides that road work shall be performed by the residents under the general road laws of the State, or in lieu thereof to pay an annual commutation tax of $4. That section also provides that the road taxes levied and collected pursuant to Amendment No. 5 of the Constitution shall when collected be paid over to the sec-

*Act 192, page 797, Acts 1913.

retary of the Crittenden County Road Improvement District for use in construction of the contemplated improvements.

Section 5 reads as follows: "It is ascertained and hereby declared that all real estate within said district, including bridges, railroads and tramroads, will be benefited by the improvement within said district more than the cost thereof apportioned according to the ratio which it bears to the county assessment of each piece of real property, bridges, railroad and tramroad within the district for this and the succeeding years, and the cost thereof is made a charge upon such property superior to all other mortgages and liens except liens for the ordinary taxes, and for improvement districts heretofore organized, but the sale of any such property in foreclosure of the lien of any improvement district or for ordinary taxes shall not release the same from the lien hereby created. The total cost of the improvement undertaken by the district shall not exceed 10 per centum of the assessed value of the real property, bridges, railroads and tramroads of the district; but the interest upon the money borrowed shall not be computed as part of the costs, and as the assessed value of such property in the district is increased, the power of the district to borrow money shall be continually increased, so that it shall always have the power to incur an indebtedness equal to 10 per centum of the assessed value of such property within the district."

Section 6 provides that "the commissioners shall report to the county court from time to time all improvements and loans of money that they may contemplate making, and all bond issues that they desire to make, and no work shall be done or money shall be borrowed without the approval of the county court." It is further provided in the section that it shall be the duty of the county court, if it approves the plan, "to levy a tax upon the property of the district sufficient to pay for said work, or such indebtedness, or said bonds as they may mature, not, however, to exceed three mills per annum on the assessed

property value; but in computing the amount to be levied each year, the court may deduct the estimated amount to be derived from the proceeds of the road tax levied under Amendment No. 5 of the Constitution of the State of Arkansas hereinbefore referred to. Said tax is to be payable in annual installments, as provided in said order. The tax so levied shall be a lien on all the property in the district from the time the same is levied by the county court, and shall be entitled to preference over all demands, executions, encumbrances or liens whensoever created, and shall continue until such assessment with any penalty and costs that may accrue thereon shall have been paid.''

A remedy is provided in subsequent sections for enforcement of the taxes by suit in the chancery court, similar to the statute with reference to the enforcement of improvement districts taxes in cities and towns.

Section 9 provides that ''if the tax first levied shall prove insufficient to complete the improvement, the board shall report the amount of the deficiency to the county court, and the county court shall thereupon make another levy on the property previously assessed for a sum sufficient to complete the improvement, which shall be collected in the same manner as the first levy; *provided,* that the tax shall never exceed three mills per annum on the dollar of the assessed property value.''

Section 12 authorizes the board of commissioners to borrow money and to issue negotiable bonds, if deemed best for the interest of the taxpayers.

Section 15 provides that ''the district shall not cease to exist upon the completion of the improvement; but shall continue to exist for the purpose of preserving the same, and to this end the commissioners may from time to time apply to the county court for the levying of additional taxes'' not to exceed three mills per annum on the dollar of assessed property.

Appellees are commissioners of the district, and an injunction against them is prayed, restraining them from proceeding, according to the terms of the statute, to award

contracts for the construction of a certain viaduct lead-
ing to the wagon bridge over the Mississippi River, and
to issue bonds.

The complaint sets forth allegations, and the proof
in the case shows that the commissioners formed plans for
the construction of improvements, consisting of certain
roads and a viaduct leading from the bridge across the
Mississippi River, to cost in the aggregate the sum of
$600,000; and that the issuance of bonds was authorized in
the sum of $385,000. The county court approved the
plans for the construction of said improvements and the
issuance of bonds and assessed an annual tax of three
mills on the lands in the district, according to the assessed
value thereof, for a period of thirty years or until said
bonds and interest thereon shall be fully paid.

It is thus seen from the foregoing statement that the
Legislature has attempted to create a road improvement
district consisting of nearly the whole of Crittenden
County—at least 95 per cent of the lands, including is-
lands in the Mississippi River, said to be a portion of the
county—and create a perpetual commission to improve
the public highways and bridges in the district "as now
or may hereafter be laid out," with authority to "deter-
mine which road shall be improved and the order in which
the improvement shall be made." A legislative deter-
mination is declared in the fifth section of the statute that
all of the real estate in the district "will be benefited by
the improvement within said district more than the cost
thereof, apportioned according to the ratio which it bears
to the county assessments of each piece of real property,"
and the cost of said improvement, not exceeding 10 per
cent of the assessed value of real property, as augmented
by future assessments, is made a charge on said property.
The road tax collected pursuant to the constitutional pro-
vision is to be turned over to the board, and a tax of not
exceeding three mills per annum on all the real property
in the district is authorized for the purpose of paying for

such improvements as shall be constructed. Is this a valid exercise of legislative power?

In *Road Improvement District* v. *Glover,* 89 Ark. 513, we said "Such districts (formed for local improvements) are based and sustainable only upon the theory that the local assessments levied to sustain them are imposed upon the property of persons who are specially and peculiarly benefited in the enhancement of the value of their property by the expenditure of the money collected on the assessment; and that while they are made to bear the cost of the local improvement, they at the same time suffer no pecuniary loss thereby, 'their property being increased in value by the expenditure to an amount at least equal to the sum they are required to pay.' * * * According to this theory, the district should not be so extended by many and independent improvements as to include territory in no wise affected by all the improvements. It is obvious the State can not be organized into a district to construct or maintain improvements to be paid for with money derived from local assessments. So counties can not be organized into districts for the building, repairing and maintaining roads without usurping the exclusive jurisdiction of roads vested in county court by the Constitution. Its roads and need for roads are too numerous, diverse and independent and some too remote from each other, to be embraced in one district and sustained by local assessments. In such a case the board of directors of the road district would become a partial substitute for the county court vested with its jurisdiction over roads."

(1-2)  That was said in a case where there was an attempt to form the whole county into a road district, but it is no less applicable in a case like this where more than 95 per cent of the lands of the county are embraced in the district. The "roads and need of roads" are no less "numerous, diverse and independent and some too remote from each other" where 5 per cent or less of the county is omitted from the district than where the whole county is embraced. The doctrine of that decision is that on ac-

count of the diversity of the road interests of the whole county, or such a substantial portion of it as renders the conditions the same as if it were the whole county, the project to improve all of the roads does not constitute a single improvement and can not be made the subject-matter of an improvement district for the purpose of levying local assessments to pay for the improvement. It is clearly an evasion of the necessary effect of that decision to attempt to organize substantially the whole of a county, into a road improvement district and it can not be done. It does not follow from this that the improvement must be confined to a single road, or to a road of any particular length. We are holding to the contrary in the case of *Cox v. Road Improvement District,* 118 Ark. 119. But where such a considerable part of the county is embraced in it as to render the various roads affected by it diverse and independent and remote, then the several improvements can not be grouped into one district and treated as single. We held in the Glover case, *supra,* and also in the later case of *Parkview Land Company* v. *Road Improvement District No.* 1, 92 Ark. 93, that the statute then under consideration was valid to the extent that it authorized the formation of part of a county into a road improvement district. It is insisted that those cases authorize the organization of any portion of the county less than the whole into an improvement district to improve all the roads in that territory, but such is not their effect. The court was not dealing with the question of how much of the county, or what roads of the county, might be included in a district, but it was meant only to lay down the rule that the whole county, on account of the diversity of its road interests, could not be put into one district to improve all the roads; and, on the other hand, that a portion of a county could be organized into a district to improve such a road or roads as could be held to constitute a single improvement. It was held in those cases that the formation of an improvement district to improve a road or roads constituting a single improvement was not a usurpation of

the jurisdiction of the county court, but that the organization of the whole county would constitute such usurpation. It is contended that the doctrine of the Glover case is modified by subsequent decisions of this court, particularly *Shibley* v. *Fort Smith & Van Buren District,* 96 Ark. 410, and *Board of Directors of Jefferson County Bridge District* v. *Collier,* 104 Ark. 425. Those cases do not in any wise limit or modify the doctrine of the Glover case, but all of them are in perfect harmony with each other. In the two cases last cited, the court held that the whole county or any part of it could be organized into an improvement district for the construction of work which constituted a single improvement resulting in special benefit to the lands in the district. The force of the doctrine of the Glover case was fully recognized in those cases, but it was found not to apply for the simple reason that the construction of the bridge in those districts, respectively, involved in the cases, constituted a single improvement.

Now, in order to carry out the attempted scheme of treating all the roads in this district, or such portion thereof as the board of commissioners may decide to improve, as a single improvement, the framers of the statute in effect, if not in express language, declared that improvements of any of the roads would result in benefits in proportion to the assessed value. In other words, the commissioners are, as said in *Cox* v. *Improvement District, supra,* given a "roving commission" to improve any portion of any of the roads in the district, and it is declared that such improvement will result in a benefit to all of the lands in the district in proportion to the assessed value thereof, and an *ad valorem* tax of three mills is levied. Such a scheme can not be treated as a legislative determination of benefits for the simple reason that the improvement is not specified and it can not be known in advance what improvement is going to be made. It is incorrect on its face—a demonstrable mistake—to say that the improvement of every road or portion of road in so large a part of the county will result in special benefit, in

equal ratio, to all the lands in the county. The statute presents an impossible scheme when read in the light of the correct theory of justification for local improvements, which is in many of our decisions said to rest entirely upon the peculiar benefits to result to the property to be taxed for local improvement.

(3) The Constitution provides (Amendment No. 5) that a county court may levy a road tax of not exceeding three mills on the dollar "if a majority of the qualified electors of such county shall have voted public road tax at the general election * * * preceding such levy;" but special assessments can be justified only on the ground that the contemplated improvement is local in its nature and that the property taxed will be specially and peculiarly benefited. *Rector* v. *Board of Improvement,* 50 Ark. 116; *Kirst* v. *Street Improvement District,* 86 Ark. 1.

(4) It is insisted that this feature of the statute, constituting a legislative determination of the anticipated benefits, is sustained by the case of *Board of Directors Crawford County Levee Dist.* v. *Crawford County Bank,* 108 Ark. 419, but we do not find the case is decisive of the present one on that subject. In that and in many similar cases we held that the Legislature might determine in advance the benefits to accrue to property from a proposed improvement, but in the present case we have a determination which is on its face inconsistent and fallacious, and the courts are not bound to accept it, for it is entirely arbitrary and unreasonable to say that the improvement of each road in the county will result in equal benefit, or benefit in the same ratio, to all the lands in the district. The case of *Alexander* v. *Board of Directors Crawford County Levee Dist.,* 97 Ark. 322, supports us in this conclusion.

(5-6) We are therefore forced to the conclusion that this statute is invalid so far as it attempts to throw substantially all of the road interests of Crittenden County into an improvement district and authorize special assessments to pay for any roads that the commissioners may

deem it advisable to improve. That would not only be a clear usurpation of the jurisdiction and powers of the county court, but would violate every theory upon which the right to impose local assessments is based. We do not mean to say that the Legislature has not complete power to regulate the manner in which the jurisdiction of county courts may be exercised; and to authorize and compel county courts to act through certain agencies appointed by the Legislature, but the lawmakers can not strip the county court of that jurisdiction or delegate to other agencies the powers which rightfully and under the Constitution belong to the county court. Nor can the Legislature group together independent improvements and arbitrarily declare them to constitute a single one so that they must necessarily be treated as such in law.

There is no authority to issue bonds, except through an improvement district, inasmuch as the Constitution contains an express prohibition against the county issuing its bonds. The chancellor erred in refusing to enjoin the commissioners named in the statute from proceeding to let the contract and issue bonds, and the decree is therefore reversed and the cause remanded with directions to enter a decree granting the relief prayed for in appellants' complaint.