JOHNS v. ROAD IMPROVEMENT DISTRICTS OF BRADLEY COUNTY.

Opinion delivered February 2, 1920.

1. HIGHWAYS—OMISSION OF LANDS FROM DISTRICT.—The omission from a road district of a tract of land situated in the heart of the affected territory and abutting on one of the public roads would make a case of unwarranted discrimination.

2. APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDINGS. —The findings of the chancellor on an issue of fact will not be disturbed unless the preponderance of the testimony is against them.

3. STATUTES—EVIDENCE AS TO INTERLINEATIONS.—The chancellor's findings of fact that certain interlineations on the face of the engrossed bill (1 Road Laws 1919, page 898) creating a road district, and on the enrolled bill, were not made thereon after the enrolled bill was signed by the Governor and filed with the Secretary of State *held* supported by the evidence.

4. STATUTES—INTERLINEATIONS AND ERASURES.—Interlineations and erasures in bills and in journal entries concerning them shall be avoided, especially in regard to the enrolled bills.

5. HIGHWAYS — IMPROVEMENT DISTRICT — AREA INCLUDED.—1 Road Laws 1919, page 898, is not void because it creates two highway districts covering 86 per cent. of all the lands in the county and all the public roads except about 17 miles; the test not being the extent of the area included in the district but the singleness of the authorized improvement and the relationship to it of the included territory as to benefits to accrue from the improvement.

6. HIGHWAYS—INVASION OF PROVINCE OF COUNTY COURT.—The above act does not authorize the commissioners to lay out and improve roads not established as public highways, thus invading the province of the county court, because the roads to be improved are not described as public roads where it appears that they were public roads.

7. HIGHWAYS—JURISDICTION OF COUNTY COURT.—1 Road Laws 1919, page 898, creating highway improvement districts, is not void as conferring on the commissioners a continuing power over the roads affected, since their power is limited to a single improvement to be presently made.

8. HIGHWAYS—ROAD TAXES—INVASION OF JURISDICTION OF COUNTY COURT.—1 Road Laws 1919, page 898, section 29, authorizing the county court to turn over to the road districts therein created certain proportions of the road tax and of the general revenue fund, *held* to be directory and not to invade the jurisdiction of the county court.

9. HIGHWAYS — MODE OF ASSESSING BENEFITS.—The provisions of 1 Road Laws 1919, page 898, for the assessment of benefits, are sufficiently definite to form a basis for the assessments.

Appeal from Bradley Chancery Court; *E. G. Hammock,* Chancellor; affirmed.

*J. C. Clary* and *B. S. Herring,* for appellants.

1. Act 237, the Bradley County Road Act (1919), is unconstitutional and void and is governed by the decisions in 89 Ark. 513; 118 *Id.* 294, and not by the principles in 213 S. W. 762.

2. It arbitrarily leaves out lands in the central portion of the county and of the twin districts and lands are arbitrarily assessed, although distant from the road and not benefited. 48 Ark. 370; 130 *Id.* 70; 196 S. W. 931. The act is discriminatory, as it omits certain tracts of lands in the heart of the district and includes others more remote. The evidence shows that an effort has been made to change the new road law by alteration with pen and ink since the Legislature adjourned. The act as passed did not contain the omitted lands when passed. The act is void as a whole. 25 Ark. 246; 34 *Id.* 224; 49 *Id* 110. A void act can not be amended. 31 Ark. 701.

3. The act is void for failure to provide a method of assessments. 133 Ark. 64; 201 S. W. 808; 89 Ark. 513.

*J. R. Wilson,* for appellees.

1. The act is not void because it usurps the jurisdiction of the county court; this is practically conceded

by appellant. See cases cited in their brief. 89 Ark. 1, the Glover case and *Salle* v. *Dalton* case.

2. The act does not create new county officers. 120 Ark. 277.

3. Nor is the act inoperative and ineffectual because it provides a blanket authority to assess benefits in the two districts.

4. There have been no alterations in the act since its proper passage and enrollment. The maps and plats show that the description of the lands would not affect the validity of the act, if left entirely out of the bill. 122 Ark. 491; 126 *Id*. 172; 130 *Id*. 70; 214 S. W. 56.

5. The findings of the chancellor are amply sustained by the evidence and are conclusive on *de novo* hearing. 126 Ark. 224; 9 *Id*. 350; 192 S. W. 906; 81 Ark. 68; 91 *Id*. 540; 24 *Id*. 431; 185 S. W. 255.

6. An act duly signed by the Governor and deposited with the Secretary of State raises the presumption that every requirement of law was complied with, unless the contrary is affirmatively shown. 40 Ark. 200; 131 *Id*. 291; *Perry* v. *State*, 139 Ark. 227; 214 S. W. 4. The invalidity of a statute must be proved beyond a reasonable doubt. 33 R. I. 541; 182 Atl. 487.

Interlineations are not of themselves suspicious when they are mere completions of imperfect descriptions of lands. 1 Enc. of Ev. 118; 61 Ala. 23. Alterations merely to correct an error will be presumed to be properly made. 82 Tex. 352; 18 S. W. 702; 30 Ark. 285; 50 *Id*. 358. See also 21 Ala. 393; 34 Ark. 588; 98 *Id*. 269; 109 *Id*. 4.

McCULLOCH, C. J. Appellants instituted this action below attacking the validity of an act of the General Assembly of 1919 (regular session), creating two improvement districts embracing contiguous territory for the purpose of improving certain roads in that county. Acts 1919, vol. 1, p. 898. The two districts are separately designated, and they are declared to be separate organizations with different commissioners. In other

words, the two organizations are entirely separate in
every respect, except that they were created by the same
statute, which is in that respect similar to the statute
which we upheld in the recent case of *Van Dyke* v. *Mack,*
139 Ark. 524.

The dividing line between the two districts is an
irregular one, though it follows section and half-section
lines, and District No. 1 embraces all of the northern
portion of the county except thirty-three sections in the
northwest corner of the county, and District No. 2 em-
braces all of the southern portion of the county, except
certain areas in the extreme southern and southeastern
part of the county equaling nearly two townships in ex-
tent.   The boundary line between the two districts does
not run straight across the county, but, as before stated,
is an irregular line, following, however, section and half-
section lines.   The territory in District No. 1 runs far
down the western side of the county well below the middle
line, and the territory in District No. 2 runs up through
the center of the county far above the middle line.   The
city of Warren, which is the county seat, is situated in
the northeast portion of the county, and the roads con-
verge, so to speak, from that point.   The division line
between the two districts is at that point along the south-
ern boundary of the city of Warren.   District No. 1 in-
cludes several roads to be improved, all converging, as
before stated, from the city of Warren.   One of those
roads begins on the northern boundary of the county in a
certain designated section and runs southerly to the city
of Warren, and through the city to a certain point along
a certain designated street.   Another one of the roads
begins on the northern boundary of the county, six or
eight miles west of the beginning of the other roads, and
runs southeasterly to the city of Warren, and thence
through the city on designated streets so as to intersect
with the other road.   The other road to be improved
begins on the eastern boundary line of the county, and
runs northeasterly to the city of Warren, thence through
that city along a certain designated street and thence

westward to the town of Banks, and thence southwesterly to a certain point connecting with a public road coming across from Calhoun County. All of these roads are connected together in the city of Warren.

In District No. 2 the principal road to be improved is one beginning in the southern portion of the city of Warren and running thence southerly and southwesterly through the town of Hermitage and thence southwesterly along a designated route to Moro Bay on the southwest boundary line of the county. The only other road to be improved in that district is one forming a loop, which begins at the intersection of what is termed the Hermitage and Ingalls public road with the road last above described at the town of Hermitage, and running southerly to the town of Ingalls on the Chicago, Rock Island & Pacific Railway, thence in a southerly direction to the town of Vick, on said railroad, and thence northeasterly to Johnsville, and thence northeasterly to the intersection at a certain point with the aforementioned road from Warren to Moro Bay.

Appellants are owners of real property in the two districts, and joined, without objection, in a single action against the commissioners of both districts for the purpose of attacking the validity of the statute as a whole. The chancellor upheld the statute, and an appeal has been prosecuted.

The first contention in support of the assault on the statute is that it is discriminatory in its effect in that a certain tract of land situated in the heart of the affected territory, and abutting on one of the public roads, is omitted entirely from each of the districts, whilst other lands more remote are included. The tract alleged to have been omitted intervenes between one of the roads to be improved and other lands which are included, and, if the charge is true that these lands are omitted, it makes clear a case of unwarranted discrimination. *Heinemann* v. *Sweatt,* 130 Ark. 70.

This contention of appellants, however, is based upon the charge that the tract of land in question was omitted from the statute, but that there has been an

unauthorized interlineation on the typewritten legislative bill as engrossed, and on the enrolled bill signed by the Governor and now on file with the Secretary of State, showing the inclusion of the tract alleged to have been omitted.  In other words, it is conceded that the tract of land in question was included in one of the districts if the face of the enrolled bill be accepted as correct with the interlineation thereon, but appellants contend, and attempt in this case to prove, that the interlineations were unauthorized and were made after the enrolled bill was signed by the Governor and filed in the office of the Secretary of State.  Much testimony was adduced bearing on the issue as to when the interlineations were made on the original typewritten bill and the enrolled bill as signed.  The testimony adduced by appellants tends to establish the fact that the interlineations describing the tract of land in question were not on the original bill as engrossed after it passed the Senate, and that the interlineations on the enrolled bill were not there when the bill was signed by the Governor and filed in the office of the Secretary of State.  On the other hand, the testimony adduced by appellees tends to show that the interlineations on the original bill were made after the bill had been prepared but before its introduction into the Senate, and that the interlineations on the enrolled bill were made with the consent of the enrolling committee of the Senate before it was signed by either of the presiding officers of the two houses of the Legislature or by the Governor.  Appellants introduced clerks and assistants in the office of the Secretary of State who testified that they copied the enrolled bill and carefully compared the copy the next morning after the bill was filed in the office of the Secretary of State, and that these interlineations were not there at that time.  The Secretary of State furnished to the State printer a duly authenticated copy of the enrolled statute and the copy thus furnished did not show these interlineations.  Another copy was furnished to one of the newspapers at Warren, and it did not show the interlineations.  A lady who was a stenographer

doing work for members of the Legislature during the session of 1919 testified that she copied the bill after it had passed the Senate and was pending in the House, and that the bill at this time did not have any interlineations on it. The testimony of all these witnesses tended to show that the interlineations were not on the enrolled bill at the time it was approved and filed in the office of the Secretary of State, and the witnesses gave very definite statements on that subject, but conceded the possibility of overlooking the interlineations in making copies.

It seems to be conceded that the interlineations on the original typewritten bill are in the handwriting of Mr. Hugh R. Carter, an engineer, who at that time was connected with the State Highway Department, and who is now the engineer for the districts involved in this litigation. The interlineations on the enrolled bill are in the handwriting of Mr. Aubert Martin, who was then a clerk or draftsman in the State Highway Department. The testimony adduced by appellees tends to show that after the preparation of the bill, but before its introduction, it was carefully checked over by two attorneys who were interested in promoting it and Mr. Carter, the engineer, in the presence of the senator who introduced it, and that when these omissions were discovered they were supplied by the interlineations of Mr. Carter, and that the bill was then introduced and was passed in that form without amendment. The testimony further shows that after the bill had been duly passed by both houses and had been enrolled, the above mentioned parties who were interested in the bill were allowed by the chairman of the enrolling committee to take the enrolled bill into a committee room for the purpose of comparison to ascertain whether or not there were any errors therein and that they discovered that the interlineations on the original bill had been omitted from the enrolled bill and these interlineations were supplied by Mr. Martin on the enrolled bill. This was, according to the testimony, with the knowledge and consent of the enrolling committee, and was done before the bill was signed by either of the

presiding officers of the Legislature or by the Governor. The Governor was introduced as a witness and testified that his recollection was that when the enrolled bill was presented to him for approval the interlineations appeared there at that time in the handwriting of Mr. Martin, with which he was familiar and recognized.

There is a sharp conflict in the testimony as to when these interlineations were made. It would serve no useful purpose to further analyze the testimony of the various witnesses for the purpose of determining its force and effect. Suffice it to say that the chancellor made a finding in favor of appellees on this issue, and we are unable to discover that there is a preponderance of the testimony against the finding of the chancellor. It is a well-established practice here not to disturb the findings of a chancellor on an issue of fact unless there is a preponderance of the testimony against those findings.

We deem it not amiss to say, without attempting to criticize the members of the Legislature or the assistants or employees of that branch of the Government, that the situation presented in this proof with respect to interlineations on the enrolled bill is a deplorable one by reason of the fact that it leaves open to question the last solemn record made of the enactment of a statute. Interlineations and erasures in bills, and journal entries concerning them, should be avoided as far as possible, even in the preliminary stages of the enactment of a statute, but when it comes to the enrolled bill there ought not to be any doubt as to the condition of the bill at the time it was approved and filed in the archives of the State for permanent preservation. That is the last and best evidence of the enactment of a statute, and its pages should be clear and unequivocal. No amount of urgency or haste should be permitted to call for sacrifice in accuracy, and when errors are discovered in comparison of an enrolled bill, the bill should be rewritten before presentation to the Governor. This case presents such an unseemly controversy and such a conflict in the testimony as to when the interlineations in the bill were made as

to serve as a warning that the situation should not again arise. Each house of the General Assembly should have sufficient assistance for the enrollment of bills as to perform that work with accuracy and dispatch, and the work should be confined to those so employed and working under the supervision of the committee.

We pass then from this phase of the case, since we uphold the finding of the chancellor that the interlineations describing the tract of land in question were made in the bill before its approval.

It is next contended that the statute is void because it creates two districts which embrace the greater portion of the whole territory of the county. Counsel for appellant state in their brief that the territory embraced in the two districts covers eighty-six per centum of all the lands in the county and all the public roads, except about seventeen miles. It is contended that the case falls within the decisions of this court in *Road Improvement Dist. No.* 1 v. *Glover,* 89 Ark. 513, and *Swepston* v. *Avery,* 118 Ark. 294. The substance and effect of the Glover case was to hold that the inclusion of the whole of a county for the purpose of improving all the roads was void for the reason that the entire road system of the county was too diverse to be made the subject of a single local improvement, and that it constituted an invasion of the jurisdiction of the county court. In *Swepston* v. *Avery, supra,* substantially all of a county was included in a road district for the purpose of improving any or all of the roads selected by the commissioners, and the statute provided that the improvement should be paid for by assessments levied in the same proportion on all of the land in the county. We have never decided that the mere inclusion of the whole of a county in a district is void. On the contrary, we have held that the whole of a county may be included if the improvement is a single one and affects all the lands of the county. *Board of Directors of Jefferson County Bridge Dist.* v. *Collier,* 104 Ark. 425.

The test is not the extent of the area included in the district, but the singleness of the authorized improve-

ment and the relationship to it of the included territory as to benefits to accrue from the improvement. This is not a case like the Glover case, *supra,* where all the roads in a county were to be improved, nor like the case of *Swepston* v. *Avery, supra,* where any or all of the roads might be improved and the cost of improving any given road taxed against all of the property in the district in like proportion. In each of the districts created by the statute now before us a large area—nearly half of the county—is included, and more than one road is to be improved, but the relations of the roads to each other are such that we can not say that the legislative determination that all of the roads to be improved in one of the districts constitutes a single improvement in that district so as to be grouped together as one improvement is arbitrary and erroneous. Nor is the area so extensive that we can say that the fixing of the boundaries of the district is arbitrary and erroneous. The case is, in this respect, ruled by the decisions of this court in *Conway* v. *Miller County Highway & Bridge District,* 125 Ark. 325; *Bennett* v. *Johnson,* 130 Ark. 507; *Sallee* v. *Dalton,* 138 Ark. 549.

It is not true, as contended, that the statute in question invades the province of the county court in authorizing the commissioners to lay out and improve roads not already established as public highways. In describing the various roads in the two districts, the statute does not in each instance refer to the roads as public highways, but it is fairly inferable that they were found by the framers of the statute to be public highways, and there is no showing made in this case that they were not public roads; on the contrary, the proof adduced in the case shows that they are public roads. It is not essential to the validity of the statute that they should be described therein as public roads. In order to render the statute void, it would be necessary for those who assail its validity to show that the roads to be improved are not public highways, and that no authority is conferred to submit to the county court the question of laying them out as

public highways. The statute provides for changes in the route, and for widening and straightening the roads, but that this must be done under the approval and authority of the county court. It is provided in the statute that all the plans for the improvement must be submitted to and approved by the county court before the commissioners can proceed with the construction of the improvements. We find nothing at all in the statute which tends towards an invasion of the constitutional jurisdiction of the county court.

Attention is called to the language of the two sections of the statute in regard to the appointment and qualification of commissioners, providing that "thereafter the commissioners of said district shall be maintained in succession in the same way as a board of improvement for the preservation and maintenance of the highway hereby contemplated." It is argued that a continuing power over roads is thus conferred, which invades the jurisdiction of the county court.

This subject is discussed in the case of *Easley* v. *Patterson, ante,* p. 52, handed down this date, and fully disposes of the question. In addition to what is said in that case, it may be added that the language of section 26 of the statute shows unmistakably that its framers did not intend to confer a continuing power to make improvements, but limited the power to a single improvement to be presently made.

Section 29 of the statute contains the following provision: "The county court of Bradley County is hereby authorized to turn over to each of said districts such proportions of the road tax collected in any of the townships in which any of the lands of either of the districts shall lie as may be just and equitable, and the county court of said county is further authorized to contribute such funds in money or script to the expense of the several improvements from the general revenue of said county as it may deem appropriate, provided, that, if said county court shall make any contribution out of the gen-

eral revenue of said county, it shall be apportioned equitably to each of the several districts hereby created.''

This is a recognition of the general public interest in the improvement of the roads mentioned. It confers authority for contributions out of the general road funds and is merely directory to the county court—not mandatory. ·The county court exercises its discretion in determining whether or not the contributions shall be made and the provision is not compulsory. It does not invade the juridiction of the county court. *McClelland* v. *Pittman,* 139 Ark. 341. It relates to the original improvement and not to maintenance or repairs, which already falls within the authority of the court.

It is next contended that the provision in the statute for the assessments of benefits is not sufficiently definite to form a basis for the assessments, and that the whole statute fails on this account. This contention is untenable, for the statute provides that the commissioners of each district shall ''make an assessment of the benefits to be received by each tract or parcel of land, railroads and tramroads, and all other real property within the district of which they are the commissioners, and shall inscribe the same in one or more books, as may be necessary, together with the assessment of benefits against each tract;'' that the assessment books shall be filed in the office of the county clerk and notice given of the time and place of a hearing to be afforded to property owners to present complaints concerning the assessments. It is also provided that as soon as the assessments have been completed the county court shall enter an order levying assessments on the benefits, and the statute also prescribes the time and method of collecting assessments and enforcing payment of delinquent assessments. There is nothing found wanting in the statute to afford a complete and adequate scheme for the assessment and collection of benefits.

This completes the discussion of the several grounds of attack on the statute, none of which we find to be well founded. The decree of the chancery court is, therefore, affirmed.

HART, J., (dissenting). It appears from the record that practically the whole of Bradley County is included in the road district provided for in the act under consideration. Eighty-six per cent. of all the lands are included in the improvement district. There are about 160 miles of public roads embraced in the bill, and this includes all of the public roads in the county, except about 17 miles.

In the majority opinion it is said that this court has never decided that the mere inclusion of the whole of a county in a road improvement district renders it void, and the case of *Board of Directors* v. *Collier*, 104 Ark. 425, is cited to show that the court has held to the contrary. The court in that case held that a bridge across a navigable stream may be of such special benefit to the lands in the entire county that it may be made the subject of an improvement district and said: ''We are not now called on to say whether a single road can benefit the whole of a county so as to justify the imposition of special assessments for its construction.'' The court had already decided that question. In *Parkview Land Co.* v. *Road Improvement District No.* 1, 92 Ark. 93, the court held that an act of 1907 authorizing the formation of improvement districts in Jefferson County is unconstitutional in so far as it authorizes the formation of the entire county into one district and the building and construction of new roads, but that such provisions might be stricken out and the remainder of the act left in force. *Road Imp. Dist. No.* 1 v. *Glover*, 89 Ark. 513, was cited in support of the holding. In discussing the question in that case the court said:

''According to this theory, the district should not extend beyond the limits of the benefits of the improvements made in pursuance of the object of its organization, and should not be extended by many and independent improvements as to include territory in no wise affected by all the improvements. It is obvious the State can not be organized into a district to construct or maintain improvements to be paid for with money derived from local

assessments. So counties can not be organized into districts for the building, repairing and maintaining roads without usurping the exclusive jurisdiction of roads vested in county court by the Constitution. Its roads and need for roads are too numerous, diverse and independent and some too remote from each other, to be embraced in one district and sustained by local assessments. In such a case the board of directors of the road district would become a partial substitute for the county court vested with its jurisdiction over roads. We do not mean to apply what we have said to improvement districts including cities and towns. That subject is not presented for consideration in this case, but has been considered in another case. *Crane* v. *Siloam Springs*, 67 Ark. 30.''

In the subsequent case of *Swepston* v. *Avery*, 118 Ark. 294, the court quoted the above language with approval. Continuing the court said:

''That was said in a case where there was an attempt to form the whole county into a road district, but it is no less applicable in a case like this where more than 95 per cent. of the lands of the county are embraced in the district. The 'roads and need of roads' are no less 'numerous, diverse and independent and some too remote from each other' where 5 per cent. or less of the county is omitted from the district than where the whole county is embraced. The doctrine of that decision is that on account of the diversity of the road interests of the whole county, or such a substantial portion of it as renders the conditions of the same as if it were the whole county, the project to improve all of the roads does not constitute a single improvement and can not be made the subject-matter of an improvement district for the purpose of levying local assessments to pay for the improvement. It is clearly an evasion of the necessary effect of that decision to attempt to organize substantially the whole of a county into a road improvement district, and it can not be done. It does not follow from this that the improvement must be confined to a single road, or

to a road of any particular length. We are holding to the contrary in the case of *Cox* v. *Road Improvement District,* 118 Ark. 119. But where such a considerable part of the county is embraced in it as to render the various roads affected by it diverse and independent and remote, then the several improvements can not be ground into one district and treated as single.''

Road improvement districts are sustainable only upon the theory that the local assessments are imposed upon the property of persons who are specially and peculiarly benefited by the improvement. The term ''local improvement'' denotes an improvement made in a particular locality in which the property adjoining or near it is specially benefited.

We think all the cases above cited are authorities sustaining our dissent in this case, and they, in effect, hold that where the size and magnitude of the district as described in the act creating it shows that the localities embraced in the district have diverse and independent interests they can not be embraced in one district. We have already held in the Glover case and the Parkview Land Company case that the whole of a county could not be embraced in one road improvement district. The effect of the opinion in the Swepston case was to hold that a substantial part of the county could not be embraced in one district in order to evade the effect of our previous decisions. Such is the case here. Practically all of the county is embraced in the district created by the bill and nearly all of the public roads in the county are included therein. It is evident that the purpose of the framers of the act was to evade our previous decisions holding that an entire county could not be included in one road improvement district. It is true the present bill purports to create two districts, but that is also a mere subterfuge. Article 5, section 1, of our Constitution provides that no law shal be passed except by bill. If the two improvement districts created should be considered as separate and independent improvements, they could not be included in one bill. It was never intended

by the framers of the Constitution that more than one independent and separate subject should be treated in one bill. Hence, if the act in question intends to create separate and independent districts, it is void for that reason. If the districts are to be considered separate and independent, they embrace in the same bill subjects which are not germane to each other, as bearing on the question. See *Hickey* v. *State,* 114 Ark. 526. If they are to be treated as one district, then it is void for the reasons above given.

What has been said in our dissenting opinion in the case of *Easley* v. *Patterson, ante,* p. 52, also applies here. The acts are not precisely the same, but they are substantially so. At least they are sufficiently alike, in our judgment, to make the reasoning in that case apply here.

Judge WOOD concurs in the views the writer has expressed.