### DICKINSON *v*. REEDER.

### Opinion delivered April 5, 1920.

HIGHWAYS—VALIDITY OF STATUTE AUTHORIZING MAINTENANCE.—Road Laws, 1919, No. 562, creating a local road improvement district in Howard County, is not invalid because it authorizes the continuance of the board of commissioners for the purpose of repairing and maintaining the road after its improvement.

Appeal from Howard Chancery Court, *James D. Shaver,* Chancellor; affirmed.

*Phil McNemer,* for appellant.

The act creating the district is unconstitutional and void, as it attempts to confer power on the commissioners to maintain and repair public roads. Const., art. 7, § 28; 89 Ark. 516. It takes jurisdiction from the county court which has exclusive control over public roads.

*Coleman, Robinson & House* and *Rose, Hemingway, Cantrell & Loughborough,* for appellee.

1. The act is not void because it provides for the maintaining of the road after completion. 213 S. W. 762; 213 *Id.* 882, 255; *Ib.* 633; 102 Ark. 306; 95 *Id.* 496; 71 Ark. 27; 78 *Id.* 584; 52 *Id.* 332.

2. If only a part of the act is unconstitutional that only should be set aside and the balance of the act upheld. 52 Ark. 490; 81 *Id.* 519; 120 *Id.* 406; 212 U. S. 322; 129 Ark. 548.

McCULLOCH, C. J. This case involves an attack on the validity of a statute creating a local improvement district in Howard County for the purpose of improving a certain road and for maintaining and keeping it in repair after so improved. Act No. 562, Regular Session of 1919.

The attack is narrowed to that feature of the statute which authorizes the continuation of the district for the purpose of repairing and maintaining the road to be improved, the contention being that that feature is void and renders the whole statute void. Thus the single question presented in the case is whether or not in the creation of a local improvement district for the purpose of improving a public road authority may be conferred in the same statute upon the same agency to remain in existence for the purpose of repairing and maintaining the road which is to be improved. That precise question has not. been heretofore determined by this court, though there has appeared in previous decisions certain language which seems to indicate what was in the minds of the judges with respect to this question. For instance, in the case of *Road Improvement District No. 1* v. *Glover,* 89 Ark. 513, Judge BATTLE, speaking for the court, said: "We are of the opinion, however, that the Legislature can by a valid act authorize the organization of a part of a county into a road district for the purpose of repairing, maintaining, and improving public roads in such district already in existence, upon the petition of the majority in value of the landowners in the territory to be affected, the cost and expense of such improvement to be paid with money derived from local assessments; and that this can be done upon the theory before suggested."

The above language was perhaps not essential to a determination of the question presented in that case, and we do not feel bound by it if we conclude now that it does not correctly declare the law.

The recent case of *Prewitt* v. *Ladd,* 140 Ark. 381, involved the question of validity of a general statute authorizing the creation of local improvement districts for the purpose of repairing and maintaining public roads which had theretofore been improved through the agency of other improvement districts. In disposing of the question presented, after citing another decision of this court, it was said: "In accordance with the principles laid down in these cases, a public road may be maintained and

the expense thereof paid for by local assessments, and so an assessment may be levied for the repair and maintenance of public roads. Assessments for local improvements are justified upon the theory that the lands upon which they are laid are especially benefited by such improvements, and for that reason ought to bear the burden, rather than property generally. The theory is that the property subject to the special assessments will be enhanced in value by such improvements to the extent of the benefit imposed. * * * In the case at bar another improvement district was organized for the purpose of maintaining a public road which had already been constructed under a separate improvement district. The lawmakers, recognizing that it would not cost as much to maintain the road as it did to construct it in the first instance, and that the benefits to be derived from the maintenance of the road would be in proportion to the benefits which accrued to the lands in building the road, enacted the section under consideration. The plain meaning of the section, when read from its four corners, is that each tract will be benefited by the maintenance proportionately to the benefits derived from the construction of the road in the first instance. This was a valid exercise of legislative power.''

There is no distinction, we think, between the power of the Legislature to confer authority in the same statute upon a local improvement district both to improve and to maintain a road and the power to create a separate improvement district for the purpose of maintaining a road which had once been improved through another agency. If the power exists in the latter instance, it exists in the former. In neither instance is there an encroachment upon the jurisdiction of the county court over public roads. Such legislation does not take away the control of the county courts over highways. The principle announced in the recent case of *Easley* v. *Patterson,* 142 Ark. 52, we think controls the determination of the question now before us. We were dealing with the question of the validity of a statute which failed to provide

for the submission of the plans for improvement of a road to the county court, and we said: "Our conclusion is that the authority to improve a public highway does not invade the jurisdiction of the county court. The road is a public highway, but the improvement is for the betterment of the contiguous lands. The improvement of the road does not in any sense constitute an interference with the general control of the county court over public highways. The authority of the board of commissioners is to bring about a betterment of the highway and not a detriment. The authority of each body, that is to say the board of commissioners and the county court, may be exercised without hindrance to the other. * * * Whenever the powers conflict, that of the board of commissioners must yield to the jurisdiction of the county court, but, as before stated, there arises no necessary conflict from the authority of the commissioners to improve the road."

This principle applies with equal force to the question of conferring continuing authority on a local improvement district board to maintain a public road, for the maintenance is, after all, a local improvement and is done for the betterment of the contiguous lands, and it does not interfere with the general authority of the county court over public roads. The two powers go hand in hand, that of the county court being superior in the event of possible conflict. It is a mere choice in the form of the legislation as to whether the authority to maintain the road shall be embraced in the same statute and conferred upon the same agency as that which concerns the original improvement, and in neither case is the jurisdiction of the county court invaded.

The question now presented was argued in the case of *Easley* v. *Patterson, supra,* but we pretermitted a decision on it for the reason that the majority of the court concluded that the particular statute involved in that case did not confer continuing authority to repair and maintain the roads to be constructed.

There is no escape from the conclusion in the present case that the statute undertakes to confer that authority.

Section 1 of the statute contains a provision that the "commissioners of said district shall be maintained in succession in the same way as a board of improvement for the preservation and maintenance of the highway herein contemplated." Section 5 provides that the commissioners "shall also maintain said roads in good condition after their completion."

Section 20 reads as follows: "The district shall not cease to exist upon the completion of the roads, but shall continue to exist for the purpose of preserving them and keeping them in repair. To this end, the county court may from time to time make such additional levies, based upon the assessment of benefits, as may be necessary for that purpose."

Section 9 contains a provision for reassessments of benefits from year to year. Section 5 also contains a provision for formation of plans for the improvement and for the approval of the same by the county court.

These provisions of the statute plainly confer continuing authority to maintain the road to be improved—not to make new improvements or to change the nature of the improvement, but to maintain the improvement according to the plans under which it is constructed.

The conclusion of the majority is that the statute is a valid one and that the chancellor was correct in sustaining a demurrer to the complaint.

Affirmed.

HART, J. (dissenting). As said by Judge Sharswood, who was not only one of the greatest American judges, but also an eminent law writer, having edited many English law books, including Blackstone's Commentaries: "We must say at some time to this tide of special taxation, thus far shalt thou go and no further. To our own decisions, as far as they have gone, we mean to adhere, but we are now asked to take a step much in advance of them. This we would not be justified by the principles of the Constitution in doing." *Hammett* v. *Philadelphia,* 65 Pa. 146.

In the majority opinion there is a quotation from *Road Improvement District No. 1 v. Glover,* 89 Ark. 513, which is admitted to be *dictum,* but which it is intimated is sufficient to sustain the present holding. In the first place, if the language quoted in the majority opinion is broad enough to cover the repair and maintenance of the road after it was constructed, why did the majority not think that similar language had that effect in *Easley* v. *Patterson,* 152 Ark. 52? We refer to section 3 of the act in that case which is quoted in the dissenting opinion. It is evident that the question presented by this appeal was not in the mind of the court in the Glover case. The learned judge who wrote the opinion said: "But a majority of the judges of this court are of the opinion that such districts can not be formed or authorized to lay out and establish new public roads, and impose upon the county court the duty to maintain them, as in section 9 of the act. They hold that this would be usurpation of the exclusive jurisdiction of the county court over roads." Section 9 of that act is copied in the statement of facts, and in plain terms places the upkeep and maintenance of the roads after they are constructed in the hands of the county court. If the act in the case of *Easley* v. *Patterson, supra,* had contained a provision similar to section 9 in the Glover case, we would not have dissented. But this is beside the mark.

It is plain from reading the Glover case that the question here presented was not decided. On the contrary the reasoning of the court in that case leads to the opposite conclusion.

Again, a quotation is made in the majority opinion from *Prewitt* v *Ladd,* 140 Ark. 381, and it is said that the principle there decided controls here. That was a case where a district had been organized for the purpose of improving a road and the improvement soon wore out. The court simply held that if the power existed to improve a dirt road in the first instance, upon the same principle a new district might be organized to re-

pair the new road after it had worn out or had become so badly out of repair that it was not practical to further use it without repairing it. In that case, the court only considered and construed section 7 of the act, which is copied in the statement of facts. This section in plain terms refers to the renewal of the old improvement which had worn out, and does not contemplate giving the commissioners the continuing power to levy assessments annually for the upkeep of the road. The language of the opinion should be construed with reference to what was before the court. It is true that there is another section of the act which gives the commissioners the power conferred by the terms of the present act, but this section was not before the court, and was not considered or construed by it. The majority are hard pressed when they use the language of the opinion in construing section 7 to apply to another section or sections which were not before the court for construction. So in *Sallee* v. *Dalton,* 138 Ark. 549, there was a section similar to the one now under consideration. But the court did not consider or construe it, and it can not be consistently said that the court had the question now under consideration in mind when the opinion in that case was made and written.

In *Hammett* v. *Philadelphia,* 65 Pa. 146, in an opinion delivered by Judge Sharswood, it was held that the original paving of a street is a local improvement and is within the principle of assessing the cost on the lots lying upon it; but that to require a perfectly good cobblestone pavement to be taken up and a new and very expensive wooden pavement to be substituted was unconstitutional. The learned judge said: "The original paving of a street brings the property bounding upon it into the market as building lots. Before that it is a road, not a street. It is therefore a local improvement, with benefits almost exclusively peculiar to the adjoining properties. Such a case is clearly within the principle of assessing the cost on the lots lying upon it. * * * But when a street is once opened and paved, thus assimilated

with the rest of the city and made a part of it, all the particular benefits to the locality derived from the improvements have been received and enjoyed. Repairing streets is as much a part of the ordinary duties of the municipality for the general good as cleaning, watching and lighting. It would lead to monstrous injustice and inequality should such general expense be provided for by local assessments.''

In *Washington Avenue,* 69 Pa. 352, Judge Agnew, himself a distinguished judge, after a very thorough examination of the question of special taxation, quoted with approval from *Hammett* v. *Philadelphia, supra,* and said: ''I concurred in that opinion, and I see no reason to regret my concurrence; but, on the contrary, I see in the present case much to confirm it; and the examination I have just made into the power of special taxation, it seems to me, tends to confirm and strengthen what was so well reasoned in *Hammett* v. *The City.* Indeed I consider it a fortunate circumstance that that case came up, for it led to an inquiry into the power of special taxation, which was in danger of running wild by insensible degrees, and leading, before we had become aware of it, into the exercise of a bastard power, dangerous to the right of private property, and violative of the provisions in the bill of rights, placed there for its protection. In questions of power exercised by agents, it is sometimes the misfortune of communities to be carried, step by step, into the exercise of illegitimate powers without perceiving the progression, until the usurpations become so firmly fixed by precedents, it seems to be impossible to recede or to break through them. The majority opinion in that case did not then, and this opinion does not now, dispute the long recognized power of local taxation for local improvements, according to the benefits conferred; but they meet and dispute departures from that power, which, if recognized, will land in the overthrow of the right of private property. Laws which cast the burdens of the public on a few individuals, no matter what the pretense, or how seeming their analogy to constitutional

enactments, are in their essence despotic and tyrannical, and it becomes the judiciary to stand firmly by the fundamental law, in defense of those general, great and essential principles of liberty and free government, for the establishment and perpetuation of which the Constitution itself was ordained.''

In that case, an act was passed incorporating commissioners to make a rural highway, the cost to be paid by assessment on lands different distances from the road, and it was held that the assessment was unconstitutional as being a local assessment for a general public benefit. It is true that this court has taken the contrary view, and has uniformly upheld statutes authorizing special assessments upon the lands peculiarly benefited for the expense of improving rural highways.

The case at bar, however, well illustrates the alarming extent to which the power of special taxation without the consent of those paying the tax has been pushed; and it was doubtless foreseeing the possibility of such conditions as we now have in this State that called forth the vigorous language used by the able judge who wrote the opinion in that case. It is certain that, in reading the opinions in *Road Improvement District* v. *Glover,* 89 Ark. 513; *Parkview Land Company* v. *Road Improvement District,* 92 Ark. 93, and *Swepston* v. *Avery,* 118 Ark. 294, in each' of which cases it was expressly held that the whole of a county could not be organized into one district for the improvement of roads, and that such districts could not be formed without the approval of the county court, no one would conclude that the court would subsequently hold that the entire county could be organized into one district or that the plans need not be submitted to the county court for its approval. The radical departure from the principles declared in the earlier cases has been brought about by progression in our decisions by what the judges term as seeming analogy between each successive case. As said by Judge Agnew:

''But reasoning by analogy is sometimes a dangerous source of error, and is always so, if we fail to see

that the analogy itself is accurate.'' The Constitution says that the county courts shall have exclusive original jurisdiction in all matters relating to roads. Const. of 1874, art. 7, § 28. If the county court has any jurisdiction, it is original and exclusive. If it is not necessary to submit the plans to the county court for its approval, where is the jurisdiction of the county court conferred by the Constitution? The jurisdiction conferred by the Constitution being exclusive, it could not be conferred upon any other tribunal or body. If, then, the jurisdiction to improve the roads can be conferred upon commissioners acting without the approval of the county court, and if such commissioners, acting independently of and without the authority of the county court, can be given the power to perpetually preserve and maintain the roads, it is difficult for the mind to grasp what power is left in the county courts. But it is said that they still have the power to lay out roads. The language of the Constitution is that the county courts shall have exclusive original jurisdiction in all matters relating to roads, and not in all matters relating to laying out roads. The concession that the county court has any jurisdiction relating to roads left carries with it a corresponding admission that the jurisdiction conferred by the Constitution has been taken away by judicial construction until all its efficiency is gone. But counsel for the road district say that the jurisdiction of the county court is no more sacred than that of any other court and that they have no sympathy with what they are pleased to call the *dictum* of the Glover case. It is true that it is only the Constitution that confers the jurisdiction upon the county court, and that the Constitution is but the expression of the will of the people in whom all sovereignty resides subject only to the paramount obligation of obedience to the Federal Constitution. But upon the Constitution the people have placed such reliance for the protection of their rights that it has become an aphorism to say of it reverently in the language of the Psalmist, it is my refuge and my fortress; my Constitu-

tion; in it will I trust. The nub of the whole matter is that the framers of the Constitution might have given any other tribunal or body jurisdiction over roads; but they did not see fit to do so. Exclusive jurisdiction in all matters relating to roads was given to the county court. It is the duty of all departments of the Government to yield obedience to the Constitution, and the duty of the court to enforce obedience thereto.

In *Sanderson* v. *Texarkana,* 103 Ark. 529, the court said that the Constitution gave the Legislature power to provide by law for the organization of towns and cities, and that one of the chief objects to be accomplished thereby was to give the municipalities control over the streets and to charge them with the duty to keep and maintain them for public use. When this power was construed in connection with article 7, section 28, of the Constitution, giving county courts jurisdiction in all matters relating to roads, it was held that in order to give effect to each provision the municipalities had jurisdiction to keep and maintain the streets and that jurisdiction over the rural highways was confided to the county courts.

Again, in *City of El Dorado* v. *Union County,* 122 Ark. 184, the doctrine of that case was approved, and the court upheld a division of the road funds between the city and the county. The court said, however, that article 7, section 28, of the Constitution, vests the county courts with exclusive original jurisdiction in all matters relating to roads, and that, therefore, the Legislature had no power to vest any other tribunal with jurisdiction over the expenditure of the road funds raised under article 16, section 9, the general revenue clause of the Constitution. All the people have the right of passage over public roads. The doctor, the merchant, the lawyer, the sawmill man, the liveryman, and many others as well as the land owners are interested in a right of passage over the public roads.

The commissioner system will tend to destroy uniformity in the upkeep and maintenance of the public

roads. The conflicting interests of the various towns and the divergent views of the different sets of commissioners will inevitably result in injury to the public interests. The system is expensive and impractical. Strife will be engendered between the towns and the country. The selfishness of human nature must be reckoned with. Those owning no lands will be interested in electing representatives who will place the whole burden of the upkeep of the roads upon the land owners upon the pretense that it is for the betterment of the lands. The people, to guard against these and other evils which might be pointed out, gave exclusive original jurisdiction in all matters relating to roads to the county courts, to the end that there might be uniformity in constructing and maintaining them, and that they might be laid out, maintained and preserved as a passageway for the whole people. It was the part of wisdom for the people to vest the control over roads in a tribunal elected by them and responsible and accountable to them. It was never intended that the jurisdiction over the public roads should be vested in commissioners who had the right of perpetual succession in office, and the practical effect of whose right to levy taxes on the adjoining land owners for the construction and maintenance of the public roads should be limited only to the extent that it should not be arbitrary or confiscatory, no matter how oppressive and how burdensome it might prove to be.

In speaking of the inherent and indefeasible rights of man in his treatment of this subject, in *Hammett v. Philadelphia, supra,* Judge Sharswood said: "The dollar which a poor man has earned by the sweat of his brow—the fortune which a rich man has inherited from his ancestors—stand on the same rock, and are surrounded and protected by the same barrier. Invested for comfort and assurance against want in sickness or old age, or cherished as a provision for widow or orphan after he is gone, it is a right which it is despotism to take from him, except for the necessary purposes of government by equal and just taxation. It is none the

less so if it be the act of the hydraheaded monster, a numerical majority, or that of a single autocrat. It is the solemn duty of the judiciary, under our Constitution, to guard and protect this right of property as well from indirect attacks under any specious pretext, as from open and palpable invasion.''

What the learned justice said applies with peculiar force and appropriateness to conditions here now. We can not close our eyes to the fact that our last Legislature passed numerous special acts creating road districts to construct, and maintain public roads at the cost of the land owners; and this, too, without any pretense of complying with the constitutional mandate of giving notice of the intention to apply for the passage of such local bills. Thus, without their having any voice in the matter at all, a burden of debt of many millions of dollars has been placed upon the lands of the State for the construction and maintenance of a system of roads (if it can be called a system), which begin nowhere and end nowhere; and the incorporated commissioners have been given the right of perpetual succession in direct conflict with our American institutions, as well as the bill of rights in our Constitution.

For these, and many other reasons which might be given, Judge WOOD and the writer respectfully dissent.