RAGSDALE *v.* CUNNINGHAM.

4-6161                                                    147 S. W. 2d 20

Opinion delivered February 3, 1941.

*W. G. Dinning,* for appellant.

*Peter A. Deisch,* for appellee.

SMITH, J. This cause was submitted in the court below upon an agreed statement of facts, consisting of twelve paragraphs, with certain exhibits made by reference a part thereof.

Sewer Improvement District No. 1 of the City of Helena was organized under an ordinance passed February 8, 1900. Proceeds of bonds which had been sold paid for its construction, and these were all redeemed and paid by the collection of betterment assessments.

On April 12, 1915, an ordinance was passed creating another district, known as Annexation No. 1 to Sewer Improvement District No. 1 of the city of Helena. The Annexation District assessed betterments; whether it issued bonds does not appear, but, if so, they have been paid and canceled.

There appears to be no question as to the validity of the ordinances creating the original and the annexation districts. From time to time, during the period from January, 1900, to January, 1930, the sewer mains of the original and annexation districts were extended in such manner as to afford sewer service to residents of the city of Helena who did not reside in either Sewer Improvement District No. 1 or the annexation to that district, and assessments were extended against their property for the privilege of receiving the benefit of sewer connection. These portions of the city of Helena have never been, by ordinance or otherwise, annexed to or

embraced in either the original or annexed district, but, under ordinances Nos. 2065 and 2073, the commissioners of Sewer Improvement District No. 1 have extended betterment assessments against the property in these outlying areas, and are now attempting to collect them.

Ordinances Nos. 2065 and 2073 appear of record in the official ordinance book on file in the office of the city clerk of Helena, and are the only ordinances which relate to the continuance or the prolongation of Sewer Improvement District No. 1 or Annexation No. 1 to Sewer Improvement District No. 1 of the city of Helena. On March 20, 1931, there was published in a newspaper in the city of Helena what purports to be ordinance No. 2073, and made an exhibit to the agreed statement of facts. That ordinance No. 2073 is entered of record in the ordinance book of the city of Helena, but has not been published.

It is stipulated that in the suit brought for the purpose of enforcing collection of assessments against the lands situated in Sewer Improvement District No. 1 and Annexation No. 1 to Sewer Improvement District No. 1, certain of the owners of property within the district, acting for themselves and for any others who might desire to join, have made answer, and denied the validity of the district, and the right of the commissioners to enforce the assessments against their lands; and as to these defendants the foreclosure proceedings have continued and the rights of the parties have not been adjudicated. As to the defendants who did not answer, a decree was rendered ordering the foreclosure of the delinquent betterment assessments; but it does not appear that the sale of the delinquent lands there ordered has been had.

There is attached a list of names of property owners who, since the adoption of ordinances Nos. 2065 and 2073, paid one or more of the assessments levied against their property, under the provisions of these ordinances, who, with other property owners who have never paid any assessments, are plaintiffs in the instant suit which was brought to cancel assessments against their property upon the theory that authority does not exist for the

collection thereof. The question was raised whether ordinances Nos. 2065 and 2073 confer authority to impose and collect assessments. It was held that this authority existed; and from that decree is this appeal.

Appellants state the question presented for decision as follows:

"1. Did the city of Helena have the authority under §§ 7384-7388 of Pope's Digest to continue or prolong the district as originally formed and levy assessments for the purpose of paying the cost of maintenance of the system of sewers in the city of Helena, after the cost of the construction had been fully paid?

"2. If it had such power, did the City Council proceed in accordance with the statute in its attempt to prolong, or continue the original district for the purpose of maintaining and repairing the system of sewers already constructed, and the cost for which had already been paid?"

It is insisted that the Constitution does not authorize the prolongation of the life of a sewer district for the purpose of maintenance; and that, if so, there is no authority to charge a betterment assessment against vacant property where no sewer connection had ever been made. Such betterments were assessed.

Appellants state their position to be that the maintenance of a sewer system is not a public improvement such as is contemplated by the constitution, and that the council of the city of Helena had no authority or right to levy assessments against the property situated within the district for the purpose of maintaining the system of sewers after the assessments for the original cost had been fully paid and discharged, and in no event is there authority to levy assessments against vacant property.

In support of the proposition last stated the case of *Southern Railroad Co.* v. *City of Richmond,* 8 S. E. 2d 271, 127 A. L. R. 1368, from the Supreme Court of Virginia, is cited.

We do not think, however, that this case has application here. It was there held that the constitution of

Virginia expressly inhibits charges of sewerage benefits against property except for construction or use of the sewer, and the opinion was upon that ground. The Virginia court held that the vacant property there involved was not a user of the improvement, and could not be so charged. Our constitution contains no such restriction; and we think vacant property may be assessed.

The theory upon which our improvement districts are sustained is that the proposed improvement will enhance the value of the land sought to be taxed, and the tax is imposed upon this enhanced value, which we call betterment.

It may be of value to the owner of vacant property to have the opportunity and the right to make sewerage connections, although the right may never be exercised so long as the property remains vacant and unimproved. But if the property is improved and buildings thereon are erected, it would add value to the property to have the facilities for sewerage connections and the right to use them.

We conclude, therefore, that there is authority to assess betterments for sewerage purposes against vacant property where, if and when desired, the sewerage connections may be made.

Sewers may require maintenance in the way of repairs or otherwise, and while ordinarily this duty is imposed upon the municipality in which the improvement district is created to maintain the sewers after the construction cost has been paid, we see no constitutional objection to the property owners assuming that burden if that desire is indicated in the manner provided by law. Act 245 of the Acts of 1909, appearing as §§ 7384-7388, Pope's Digest, confers that authority, and the petition of a majority in value only is required to impose that burden upon the property in the district. The theory of the law is that, if the construction of sewers confers benefit by way of enhanced value, the maintenance thereof will effect the same result. This act 245 provides that the cost of this maintenance—

which is called prolongation of the district—shall be assessed by the assessors making the original assessment of benefits. We perceive no difference, in a constitutional sense, between the maintenance or prolongation of a sewer district and the maintenance of a road or a road district, and the authority to maintain a road and ditch conferred by statute has been held to be the exercise of a power conferred by the constitution and statutes on the property owners. *Dickinson* v. *Reeder,* 143 Ark. 228, 220 S. W. 32; *Prewitt* v. *Ladd,* 140 Ark. 381, 215 S. W. 633; *Conlee* v. *Miller,* 144 Ark. 56, 221 S. W. 465.

In the Dickinson case, *supra,* Judge McCulloch quoted from the opinion of Justice Hart in the Prewitt case, *supra,* these statements: " 'In accordance with the principles laid down in these cases, a public road may be maintained and the expense thereof paid for by local assessments, and so an assessment may be levied for the repair and maintenance of public roads. . . . In the case at bar another improvement district was organized for the purpose of maintaining a public road which had already been constructed under a separate improvement district. The lawmakers, recognizing that it would not cost as much to maintain the road as it did to construct it in the first instance, and that the benefits to be derived from the maintenance of the road would be in proportion to the benefits which accrued to the lands in building the road, enacted the section under consideration. The plain meaning of the section, when read from its four corners, is that each tract will be benefited by the maintenance proportionately to the benefits derived from the construction of the road in the first instance. This was a valid exercise of legislative power.' "

We conclude, therefore, that act 245 of the Acts of 1909, appearing as §§ 7384, *et seq.,* Pope's Digest, does confer authority to prolong sewer districts and to assess the maintenance cost thereof against the property in the district.

Act 64 of the Acts of 1929 (Vol. 1, p. 241), entitled, "An Act to Simplify the System of Organizing and Administering Local Improvement Districts in Cities and

Towns," and acts amendatory thereof, appearing as §§ 7368, *et seq.*, Pope's Digest, provides a system for the enlargement, repair and extension of water, light and sewer districts; but before the powers conferred by §§ 7368, *et seq.*, Pope's Digest, may be exercised, there must be a petition "signed by parties claiming to be two-thirds in assessed value of the real property in the original territory and in the territory to be annexed, each taken separately, . . ."

There is no contention that the district operated under the authority of this act. The ordinances here in question presently to be discussed recited that they were enacted upon the petition of a majority of the property owners.

Has there been a valid exercise of the powers conferred by §§ 7384, *et seq.*, Pope's Digest, under which the assessments here in question were levied?

We think there is no constitutional objection, or lack of statutory authority, to treat the original district and the annexed district as a single district for purposes of maintenance after the indebtedness of both districts has been discharged, if the two districts are so connected that they may, in fact, be regarded as a single district.

But it is said in the brief of appellees that "Appellee-district contends that two ordinances were enacted, assessing the value of benefits against property located in the original sewer district, and also in annexation No. 1." It is further said: "It is the contention of appellee-district that each of these documents (ordinances) constitutes evidence of the enactment of a separate ordinance, one of them to assess the benefits to property in Sewer Improvement District No. 1, and the other to assess the benefits to property in annexation No. 1, to said district." We examine these ordinances to ascertain just what authority has been conferred.

Ordinance 2065 is entitled, "An ordinance prolonging Sewer Improvement District No. 1 for the purpose of maintenance and repairs," and in the body thereof it is enacted that Sewer Improvement District No. 1 of the city of Helena, heretofore organized, is hereby pro-

longed and continued for a period of 20 years from December 18th, 1930. It appears, from its preamble, that this ordinance was enacted upon the petition of a majority in value of the owners of real property located within Sewer Improvement District No. 1. There is nothing in the ordinance or its preamble to indicate that any property owners in the annexed district had signed or that there was any intention to prolong the annexation district for any period of time. Ordinance 2065 was approved January 8, 1931.

To make the provisions of § 7384, Pope's Digest, available, the passage of two ordinances is required, the first upon the petition of a majority in value of the property owners to prolong the life of the district. The second ordinance requires that the board of assessors of the original district "shall thereupon assess the value of all benefits to be received by such land owned by reason of the maintenance and keeping in repair of said improvement. . . ."

Now, there are two ordinances No. 2073, one of which was entered upon the record of ordinances, but was not published, and the other was published, but was not entered upon the ordinance record. The first of these—and the one not published—is entitled, "An ordinance assessing the value of benefits to be received by the owners of each of the several blocks, lots, and parcels of land within annexation No. 1, to Sewer Improvement District No. 1 of the city of Helena, Arkansas." This ordinance was approved March 10, 1931.

By its express terms and recitals, it relates only to the annexation district. But there was no ordinance prolonging the life of that district. The ordinance does recite that a majority in value of the property owners have petitioned the passage of an ordinance for the construction of the annexation district, but it does not recite that such an ordinance was passed, nor does it enact that the life of the annexation district shall be prolonged. There is no ordinance prolonging the life of the annexation district, and there is, therefore, no authority to assess and impose upon the lands in that district the cost of maintenance.

Now, as we have said, the original and the annexed district might, after the indebtedness of both districts had been discharged, have been treated as a single district, and the life of the consolidated district prolonged and the cost of maintenance assessed upon all property in both districts; but it is certain that this was not done. The ordinances treat the districts as being in existence as separate entities.

The second ordinance, No. 2073, which was published, but not entered in the ordinance record, was passed March 10, 1931. By its express terms and recitals, it relates solely to Sewer Improvement District No. 1, that is, the original district. But the trouble with this ordinance is that it attempts to exercise a power which the statute does not confer. This ordinance, exclusive of its preamble, is as follows: "Section 1. That the said several blocks, lots and parcels of real property, railroads and railroad rights-of-way in said Sewer Improvement District No. 1 be and they are hereby assessed according to the assessment list as the same now remains in the office of the city clerk of the city of Helena and as the same may be annually readjusted by the Board of Assessors, and that 7-10 of one percentum of said assessment of the value of benefits to each of said blocks, lots and parcels of land, railroads and railroads rights-of-way shall be paid annually on or before the 1st day of May beginning in 1931, until the whole of said assessment shall have been paid."

The statute under which the proceedings here involved were had does not confer upon the City Council the authority to assess the betterments and cost as § 1 of the ordinance undertakes to do. The statute (§ 7384, Pope's Digest) provides that "Thereupon the council shall provide by ordinance for the prolongation or continuation of said district as prayed for, and the board of assessors shall thereupon assess the value of all benefits to be received by such land owned by reason of the maintenance and keeping in repair of said improvement as affecting each of said blocks, lots or parcels of land within said district." This was not done, nor required by the ordinance, although the ordinance did provide

that all assessments "may be annually readjusted by the Board of Assessors . . ." In other words, the ordinance undertakes to make the assessment which the statute requires the Board of Assessors to make.

It appears, therefore, that there has been no assessment of benefits in either the original or the annexed district, and the payment of benefits not assessed may not be enforced. There was a decree enforcing the assessment of benefits against all the property in both the original and the annexed districts, and also against the territory not in either district which had been afforded sewer service. But, as appears from what has already been said, the enforcement of this decree by the sale of the delinquent property was postponed as to the owners who had resisted the collection of the taxes. The instant case was brought as an independent suit, not only to restrain the enforcement of this decree of foreclosure, but to cancel all assessments made for maintenance purposes. As it appears from the face of the ordinances themselves that no valid tax has been levied, the protesting property owners are entitled to the relief prayed. There is no theory under which betterments may be assessed against lands which were never included, by any ordinance, in either the original or the annexation district.

The decree will, therefore, be reversed and the cause will be remanded with directions to dismiss the suit to enforce the payment of the taxes as being unauthorized.