The Honorable Toni Bradford State Representative 8410 Wildcat Drive Pine Bluff, Arkansas 71603-9112
Dear Representative Bradford:
I am writing in response to your request for an opinion on the following facts and question:
A Sewer Improvement District (SID) is developed by a sponsor and upon completion, it is turned over to the City's Wastewater Department. Past practice has been for the Wastewater Department to waive connection fees for three (3) years after substantial completion of the district. For all new residential customers (not connecting under the auspices of the SID), the Wastewater Department requires that the resident pay a new customer charge (i.e. deposit of $30.56, which represents a sewer fee based on two (2) average residential monthly sewer bills).
After the three year period of time has expired for an SID, may the Wastewater Department impose their standard connection and customer charge as a sewer fee for these new SID customers"
RESPONSE
A definitive resolution of your question may require more facts concerning the creation and status of the SID. As a general matter, however, it is my opinion that a city wastewater department, once it takes over the operation of a completed sewer improvement district, is authorized to charge reasonable fees and rates to customers for the services it offers. The statutes and cases are not entirely clear as to the city's authority to levy a "connection" charge under these circumstances. The issue could benefit from legislative or judicial clarification. It is arguable, however, under A.C.A. § 14-235-223, that the city has this authority, along with the clearer authority to levy the "new customer" deposit.
Sewer improvement districts may be created in a number of different ways. See, e.g., A.C.A. §§ 14-88-201 et seq. (general municipal improvement districts); §§ 14-92-101 to-603 (suburban improvement districts); §§ 14-93-101 to-133 ("property owners" improvement districts); §§ 14-94-101 to-128 ("Municipal Property Owners" Improvement District Law"); and §§ 14-249-101 to-106 (suburban sewer districts). You have not indicated what type of sewer improvement district is at issue "that is, whether it is a suburban sewer improvement district," a "property owners" improvement district," or some other type of improvement district. Similarly, you have not indicated under which statutory subchapter the district was created or by what method or under which statute or other authority it was "turned over" to the municipality. It is impossible to answer your question definitively without this information. Nevertheless, in many instances, municipalities, as you suggest, are authorized to take over operation of improvement districts at the conclusion of the project. See, e.g., A.C.A. § 14-89-1303 (Repl. 1998) and Ragsdale v. Cunningham,201 Ark. 848,147 S.W.2d 20 (1941) (noting that ordinarily the duty to maintain and repair sewers is imposed upon the municipality in which the improvement district is created after the construction cost has been paid). See also, Pine Bluff Water Light Company v. Sewer District No. 1, 56 Ark. 205, 19 S.W. 576 (1892) (when sewers of improvement district were completed, they became subject to the control of the City of Pine Bluff, and the board of the sewer district no longer had lawful control over them); and Kraft v. Smothers, 103 Ark. 269, 146 S.W. 505 (1912) (when an improvement district is organized for the purpose of constructing a sewer, the sewer, when constructed, becomes subject to the control of the city).
You note, in connection with your question, that "past practice has been for the Wastewater Department to waive connection fees for three (3) years after substantial completion of the district." I have found no state statute addressing this three-year waiver of connection fees. It is my understanding that a local ordinance may dictate this result. I have not been provided with any such ordinance, however. Additionally, it is my understanding, although it is not stated in your question, that the city in question charges a standard fifty dollar ($50) connection fee in addition to the $30.56 deposit for new customers. It is my understanding that your question focuses on whether the City can charge this connection fee and deposit to new customers living within the boundaries of the sewer improvement district, whose property was assessed for improvements by the district, but who have not yet connected to the sewer. It appears the question is prompted by a concern that an improvement district resident has already paid assessments on his property for the improvements completed by the sewer improvement district and should not be charged a separate "connection fee" or customer deposit when making the physical connection of his property to the sewer.
The most relevant statute regarding the charging of fees for connection to a sewer is A.C.A. § 14-235-305, which provides that:
(a) The city council shall regulate, by ordinance, the terms, time, and manner, and the compensation which shall be paid by the private parties not building sewers under orders of the municipal board of health under this act, upon compliance with which the parties may tap the sewers of the municipality.
(b) No person shall be allowed to tap any sewer without paying in proportion to the value of his property to be benefited by it, as compared with the value of the property taxed in the district and the actual cost of the sewer.
Subsection (a) of this statute, and the subchapter of which it is a part, was originally adopted in 1881 (see Acts 1881, No. 84), as a part of a lengthy act authorizing the creation of improvement districts. See Title, Acts 1881 No. 84 ("An Act to Regulate the Manner of Assessing Real Property for Local Improvements in Cities of the First Class"). The applicable subchapter, however, addresses actions taken "[a]fter completion of any sewer or branch sewer authorized to be built under the provisions of [the 1881 Act]." See A.C.A. § 14-235-302(a). Thus, after completion of a sewer improvement district under the Act, A.C.A. §14-235-305(a) provides for the city council to set the terms, time, manner and compensation which should be paid by "private parties not building sewers under orders of the board of health," in order for them to tap into the sewer system. This required persons voluntarily tapping into the sewer system to pay whatever reasonable compensation the city set for that action. Subsection (b) of the statute, set out above, was added later, in 1889. See Acts 1889 No. 18. It was originally added as part of the same sentence as subsection (a) but was thereafter split into the two different subsections (a) and (b), presumably during the codification process of the Arkansas Code in 1987. The original language of subsection (b) qualified subsection (a) by stating that: "but no person shall be allowed to tap any such sewer without paying in proportion to the value of his property to be benefited thereby, as compared with the value of the property taxed in the district and the actual cost of said sewers." (Emphasis added).
The language of these subsections is not express as to whether they address persons residing inside or outside the boundaries of the completed sewer improvement district. It is thus somewhat difficult to tell from a reading of this statute alone whether it prohibits a city from enacting an ordinance charging a connection fee to persons residing within the boundaries of the original improvement district. When viewed in context of the original act of which it was a part, however, A.C.A. § 14-235-305 appears to be addressing persons outside of the improvement district boundaries. It has been stated by one commentator in this regard that:
When a sewer has been constructed by a municipal corporation and not by an improvement district, the municipality may impose a reasonable charge for permitting the connection with its sewer. [Citing what is now14-235-305 above]. When a sewer improvement has been constructed and is owned by a privately owned public utility company, it may impose reasonable charges for the privilege of connecting with its sewer.
When the sewer improvement has been constructed by a sewer improvement district, it seems by necessary implication that the statute does not contemplate a charge for the privilege of connection as against property assessed for the improvement; but the 1889 amendment to the statute unequivocally provides that the owner of property outside the assessment district who voluntarily connects his property with the sewer system shall pay for the privilege. If the outside owner be compelled to make the connection by order of the board of health, the question is his liability to pay for the connection privilege has not been definitely determined.
Horace Sloan, The Law of Improvement Districts in Arkansas, § 636 (1928) (emphasis added) (footnotes omitted).
At least one commentator, therefore, has expressed doubt that a property owner already taxed in an improvement district for the benefits to his property from construction of the sewer may also be charged for the privilege of connecting to or "tapping" into the sewer under A.C.A. § 14-235-305. In fact, case law indicates that at least one city did not, in years past, charge a connection fee to property owners tapping into sewers built by improvement districts. See, e.g., Branch v. Gerlach, 94 Ark. 378, 127 S.W. 451 (1910) (discussing an early city ordinance in the City of Argenta that levied a twenty-five dollar connection fee for each connection to a sewer "built by the city and not by assessment on the property in the district . . .").
There is thus some early secondary authority for the proposition that a city is not authorized to impose a sewer connection charge to residents who live on property upon which assessments were imposed by the original improvement district. It may be that a prohibition in this regard arises by "negative implication" from A.C.A. § 14-235-305 as stated in the treatise above. Cf. also, Martin v. Hilb, 53 Ark. 30014 S.W. 94 (1890) (discussing, but not deciding, whether persons outside the boundaries of the improvement district who were ordered to connect by the board of health were responsible for connection charges).
After the adoption and amendment of A.C.A. § 14-235-305, however, the General Assembly passed Act 132 of 1933. That act gives municipalities the power to own, acquire, construct, equip, operate, and maintain within or without the corporate limits of the city a sewerage collection system or treatment plant and all other appurtenances necessary or useful toward those purposes. A.C.A. § 14-235-203. With certain exceptions not relevant here, the subchapter "shall, without reference to any other statute, be deemed full authority for the construction, acquisition, improvement, equipment, maintenance, operation and repair of the works. . . ." A.C.A. § 14-235-2204(a). The council of the municipality "shall have power, and it shall be its duty, by ordinance to establish and maintain just and equitable rates or charges for the use of the service rendered by the works, to be paid by each user of the sewerage system of the municipality. A.C.A. § 14-235-223. This subchapter does not expressly address improvement districts or indicate how its provisions apply once a city has taken over a project constructed through a sewer improvement district. It is clear that the more recent 1932 act did not repeal or supersede the improvement district statutes. See Ray v. City of Mountain Home, 228 Ark. 885,311 S.W.2d 163 (1958) ("[t]he . . . Municipal Improvement District Statutes [A.C.A. §§ 14-88-201 et seq.], and the Sewer Revenue Bond Statutes [A.C.A. §§ 14-235-201 et seq.] . . . do not cover the same field and are not repugnant").
Once a sewer improvement district has been lawfully taken over by a municipality for purposes of operation and maintenance, however, the municipality may charge reasonable fees for the services it provides customers within the improvement district. This conclusion is expressed in the case of Freeman v. Jones, 189 Ark. 815, 75 S.W.2d 226 (1934). In Freeman, the court held that a city may charge monthly user fees for sewer improvements it provided to improvement district property owners. In that case a charge of fifty cents a month to improvement district residents for new construction connecting the old improvement district mains to new city mains and a new disposal plant was upheld. The court stated:
It does not appear that the charges made against the owners of the several houses in the city are unreasonable, and it goes without saying that cities and towns may impose a reasonable charge upon owners of property connected with a sewer system owned or operated by the city or town.
Id. at 818.
In my opinion, therefore, the monthly "deposit" of $30.56 required of new customers is clearly authorized. Such utility deposits are commonly charged as a means of securing payment of the monthly user charges. Once the city takes over operation of the improvement district's sewer operations, it may thus charge monthly user fees and a deposit to secure payment of these fees.
What remains somewhat uncertain is the levy of a "connection charge" as discussed above. The more recent § 14-235-223 does not specifically address "connection fees" or charges, much less their application to residents of a former sewer improvement district. The broad language of this statute regarding the setting of "rates or charges," however, presumably encompasses connection charges. See, e.g., Ops. Att"y Gen. 99-312 and 99-068. The issue presented is whether such connection charges can ever be imposed against improvement district residents whose property was assessed for the sewer improvements. As noted above, at least one commentator believes that A.C.A. § 14-235-305 contains a "negative implication" prohibiting charging improvement district residents connection fees. I cannot state with certainty that the later adoption of A.C.A. § 14-235-223 supersedes any such negative implication. The language of A.C.A. § 14-235-223 is broad, however. It provides for notice and a public hearing prior to the imposition of the city's rates and charges. One provision in this statute provides that "The rates and charges so established for any class of users or property served shall be extended to cover any additional premises thereafter served which fall within the same class, without the necessity of any hearing or notice." A.C.A. § 14-235-223(f)(1) (Repl. 1998). It may be argued that A.C.A. § 14-235-223(f)(1) authorizes the connection charges about which you inquire. That provision, which was adopted later than A.C.A. § 14-235-305, extends the same rates and charges established for any class of users to premises of the same class newly served by the city. To the extent, therefore, that the city charges existing city residents the standard fifty dollar connection fee, this statute may be viewed as authorizing the same charge on improvement district residents when their property begins to be served by the city under its takeover of the district. Although the language of A.C.A. § 14-235-223(f)(1) regarding users "within the same class," is not well-defined, presumably the city has some authority to specify such distinctions in relevant ordinances. Such distinctions might, in my opinion include standard "waiver" periods within which improvement district property will not be considered "with the same class" as other property. It is arguable that any "negative implication" in A.C.A. § 14-235-305 against charging improvement district residents connection fees has been altered by the more recent adoption of A.C.A. § 14-235-223. In my opinion, however, the issue is not free from doubt, and could benefit from legislative or judicial clarification.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General *Page 1